Good morning, Your Honors. May it please the Court. I'm Dennis Cook representing Associated Builders and Contractors, Southern California Chapter. There are approximately 30 apprenticeable crafts or trades in the construction industry that are generally recognized in California. We have 58 counties. So under Section 208C, Title VIII of the California Code of Regulations, we have now created 1,740 apprenticeship wage rates on prevailing wage jobs. Given the fact that the apprenticeship programs typically are about four years, some three, some five, if we multiply that number by the four years that are involved, we end up with 6,980 apprenticeship wage rates that have been created by Section 206C. These wage rates vary by craft, by classification, by location of work, and by the number of years the apprentices are in the apprenticeship training program. For example, as another way in which Section 208C varies the wage rates among all the different apprentices that work in the building and construction trade, let's say we have an electrical contractor working in Los Angeles County where 35% of the wage or the base hourly wage rate, excuse me, the hourly wage package, consists of fringe benefits. If he or she takes that apprentice to another county where the wage, where the base hourly wage and the hourly wage package is lower, that automatically means that the fringe benefits are now 40% of the base, of the hourly wage package. Consequently, that contractor must do one of two things. He either or she either reduces the amount of fringe benefits that are being provided to the employee or increases the amount of wage rate to that employee in that particular county. Another example of how this plays out, let's say, which is very typical, electrical contractors is participating in a state-approved apprenticeship training program, and the program requires medical benefits to be paid for the employees, pension contributions made, and of course an apprenticeship training contribution. In that instance, the State of California has reserved for itself the right to determine whether the costs of these benefits are reasonably related to the benefits that are being provided itself. So, for instance, if the State of California, the Division of Apprenticeship Standards, were to say that Kaiser has a very nice health plan and it costs the hourly equivalent of $3 an hour, but PacificCare is offering one at $4 an hour, they could, under this regulation, determine that the cost of the benefit for PacificCare is not reasonably related to the benefit itself and only allow the contractor to take credit up to that $3 an hour amount. Some electrical contractors, for instance, or other contractors may work in areas where there is no existing prevailing wage rate. So, under Section 208C2, under those circumstances, the Division of Apprenticeship Standards reserves for its right, for itself, the right to approve or disapprove the rate that a contractor will pay an employee, excuse me, an apprentice in that particular county. So, if the contractor comes up with a wage rate, he must, number one, consult with the Division of Apprenticeship Standards, and number two, the Division of Apprenticeship Standards must approve that amount. There are other unions in California other than those that are affiliated with the AFL-CIO, one of which was Nutter Electric. Nutter Electric submitted a declaration in the proceeding below in which they have an apprenticeship training program with wage rates that are different than the prevailing wage itself. So, Nutter Electric's negotiations with the union, therefore, would have to be approved by the Division of Apprenticeship Standards should they attempt to pay an apprentice a wage rate in a county that does not have an existing prevailing wage rate. The Section 208C6 is the section that also provides that a contractor does not have to even comply with Sections 208C1 through 5 if they agree to two things. One, that they pay the same apprenticeship wage rates on public works as they do on private works, and two, that the wage rate that they pay will be equal to the or in excess of the prevailing wage itself. So, this provision allows a contractor to pay less than the entry-level rate at 40 percent. They could pay 30 percent. They could pay 35 percent. This allows them to vary the progressive wage increases. They don't have to be equal anymore. They could be 5 percent the first year, 10 percent the next year, 15 percent in the third year. This would allow them to also pay less than the last year's apprenticeship rate. Instead of it being at least 80 percent, they could do 75 percent. They could do 70 percent. All of these would be permitted under Section 208C6 as a means to undercut and undermine the enrichments. This last example you gave, how is it, by doing what could they undercut? They would be able to pay less than the so-called entry rate at 40 percent. If they did what? If they truly, this is a section that relates to contractors that are signatory to collective bargaining agreements. The collective bargaining agreement essentially is that which is used to determine the prevailing wage rate itself. So they could negotiate with the union to allow more rates. That's not what the regulation says. That's one of the factors they consider. They don't set it simply by the collective bargaining agreement. And that's what the California law says. Well, I believe the California law says that the prevailing wage is determined by reference to the collective bargaining agreement. That's one of the circumstances, right? That is the first and initial one. And if they determine that it's based upon the collective bargaining agreement, they stop the process. Are you claiming that California statute is unconstitutional? No, I'm not. It's invalid? It's not the prevailing wage law, Your Honor. No. I'm saying that the prevailing wage rate, however, is set by reference to the collective bargaining agreement. And once the State of California determines that it is based upon the collective bargaining agreement, they adopt that collective bargaining agreement for many other purposes, including, for instance, the setting of overcrowding. I thought the California case, I don't remember the name at the moment, says you don't just accept the collective bargaining agreement. You must determine what the prevailing rate is in the community. Actually, that's not how the State, the prevailing wage is set, Your Honor. They reference the collective bargaining agreement. Once the collective bargaining agreement is referenced and they determine that the prevailing rate is based upon that collective bargaining agreement. I think it's – I thought it was the opposite. They determine that the collective bargaining agreement properly reflects what the prevailing wage is in the area. Well, they have to determine what the prevailing wage rate is. So the first thing that the director does is, by statute, is to reference the collective bargaining agreement. They may – Which statute, sir? I'm sorry? Which statute? Section 1773, I believe, Your Honor. Of the regulations? No. Of the California Labor Code. Okay. I believe it's 1773. It might be 1773. And that statute you say is valid? Yeah. The process is that the statute says they shall, not may, but they shall reference the collective bargaining agreement, and then it says they may also refer to the Federal prevailing wage rates. But once they reference the collective bargaining agreement, if it's determined on the modal rate method that the collectively bargained rate is the prevailing wage rate, then they adopt that collectively bargained rate, and not only that rate, but all so-called predetermined rates in that collective bargaining agreement itself. So, counsel, if a determination is made that the collective bargaining agreement does not reflect the prevailing wage rate, what's done then? They would refer to the Davis-Bacon Act wage rates, and they would also have the authority to conduct a wage survey at that point to determine whether there should be a weighted average or an average wage rate used. So then is your argument that because they first look at the collective bargaining agreement, that somehow that, what, negates, makes it preempted? Well, for private projects, yes, Your Honor, I'm not arguing that the prevailing wage laws applies to public construction as preempted. But what I am arguing is that the way in which the prevailing wage is determined under the state prevailing wage law has a preemptive, actually interferes with the way in which the National Labor Relations Act is supposed to act on private jobs. I find that hard to understand as I read the statute. The statute does say you'll look at the collective bargaining agreements. That's the first sentence. The second sentence says if the rates don't constitute the rates actually prevailing in the locality, you'll do something else. Yes. So how does the collective bargaining agreement establish the rate vis-à-vis what the actual prevailing rates are in the locality? I guess if I could do this by way of example, let's say there are a thousand carpenters in Los Angeles County. They try to determine through using what's called the modal rate method what is the most commonly reoccurring rate paid to those 1,000 carpenters. So if 998 of those carpenters are paid different wage rates and two are paid the same rate, the most commonly reoccurring rate is the rate that's paid to those two carpenters. Of course, under a collective bargaining agreement, all the employees are required to be paid the same rate. And consequently, this type of system favors the adoption of the collective bargaining agreement as the prevailing wage rate. I don't see. I'm having a hard time seeing what's wrong with that. I'm not saying there's nothing. Let's say in the locality they go out and they check and they find out that collective the only collective bargaining agreement in the area. All these private folks are just paying beautifully. And so the CBA is not the prevailing rate in that particular community. That would not be the case, Your Honor. It doesn't happen that way. I'm not asking what happens in reality. I'm asking what happens in my special, unique world. I'm in the special, unique world. It's not the real world. And in my special world, there are 1,000 carpenters, and 800 of those are paid at varying rates, but all higher than the CBA that's just been negotiated for the 200. What happens then? According to the statute, they have to set the prevailing wage based upon the modal rate. They have to. Yeah. So in your example, if 200 are paid the same rate and 800 are paid different rates, albeit higher rates, the prevailing wage rate would be that which was paid to the 200 because that's the most commonly reoccurring rate. Now, if these other 800 were all paid at a higher rate, all the same, let's say 250 of them were paid at a higher rate, but the same one, then that would establish it, not the CBA. Is that correct? That's correct. That, in theory, could happen. It never has happened. But for very good reasons, contractors, number one, don't pay the same wage rate even to their own journey persons because they pay the non-signatory contractor, for instance, would be paying based upon someone's skill, experience, and knowledge. And for antitrust purposes, they're not going to be calling up their competitors and asking how much are you paying your journey-level people because I want to pay the same. At least they wouldn't do that without the advice of counsel. So you would say that all this other language is just eyewash because, as a practical matter, they are going to adopt the CBAs, period. As a practical matter, they do. That is correct. And I think this calls into question exactly what the Bragdon case was all about because the Bragdon case is very similar to what we have here. In Bragdon, the county of Santa Contra Costa and a few other municipalities passed an ordinance that said that the prevailing wage had to be paid to private on certain forms of private construction. In other words, commercial and industrial jobs. That's not a premise, is it? That's all employees. All construction workers. Yes. And that's the only statute or ordinance in the country, as far as I know, that provides prevailing wages for private employees other than apprentices. It, to my knowledge, is the only one that got into court. Of course, it was struck down by the circuit. And that was a rather radical statute. In my opinion, yes, Your Honor. Okay. And the difference that the — I think we need to look at the difference between that case and this case. In that case, it applied to — Well, one is that this applies to apprentices. Right. In that case, it applied to journeymen and apprentices. Here, now, the State has taken a step back and said, okay, well, now I'll only do the same thing. Well, two is that it was mandatory, right? Sorry? Two is that it was mandatory. Yes. That is correct. And this is not, this regulation. It is. Private employers do not have to employ registered apprentices. On private works, they do not. On public works in the State of California, it is now mandatory to employ apprentices. It's unlike the Dillingham case in which Justice Thomas commented that at that point in time, the California Prevailing Wage Law did not require the actual employment of apprentices on public works jobs. Now we do. Now we require apprentices that are registered in State-approved apprenticeship training programs to be employed on public works projects. In addition to that, and somewhat simultaneously, the California Labor Code was expanded to cover what we would traditionally call private construction work. So in Labor Code Section 7, some forms, I'm sorry, some forms of private construction work. So, for instance, in Labor Code Section 1720 subpart B, now private development, where let's say a building fee was reduced, waived, or forgiven, would cause that entire private development to be covered by the Prevailing Wage Law. The Director of the Department of Industrial Relations also issues coverage determinations. So in this year, in March of this year, he issued two very significant coverage determinations saying that fabrication work, not done on the site of construction but done off-site, was also covered under the State Prevailing Wage and apprenticeship obligations. Therefore, apprentices would have to be done off-site in fabrication plants. Of course, that raises all sorts of other interesting issues, such as. . . This isn't private work, ma'am? This is fabrication work that is fabricated that is shipped to a public works project. So, for instance, if General Electric builds a generator in the State of Pennsylvania and it's fabricated specially to specifications for a particular contract, according to these coverage determinations now, General Electric in Pennsylvania is supposed to be abiding by the California apprenticeship standards. Now, both of those decisions have been stayed pending administrative appeal, probably for good reason, as we see what the effect of those decisions possibly could be on contractors and fabricators in the State of California. Outside the State of California, for that matter, the limit is unknown at this point. But the point is, is that the use of apprentices is now mandated under the Prevailing Wage law, and then the Prevailing Wage law itself has been expanded substantially. Perhaps if you have about two minutes left, do you want to save it for rebuttal? Yes, Your Honor.  Thank you. Good morning, Your Honors. I'm John C. Carrollson. I represent the State Appellee in this case. I wish to use about ten minutes of time for oral argument and leave the balance to counsel for Appellee State Building Construction Trades Council. We would submit to the Court below, Judge Stotler, decide this decision correctly and apply the two controlling cases in holding that the California regulation of minimum wages for registered apprentices is not preempted by either the NLRA or ERISA, and that the Dillingham 1 and Dillingham 2 cases control this issue. Before I get to those cases, I wish to first emphasize, as has been pointed out today, that this regulation is voluntary. Employers can hire on private works apprentices without going through a registered apprenticeship program, and apprenticeship programs can operate without State approval. And this is a specific factual finding by the district court, finding of fact number nine, and that really is not a decision I have. It's not voluntary as a public work, so is that correct? Right. Well, it's not as voluntary, I should say, as in the private works. You say as voluntary. It's still voluntary? Well, let me explain that. Dillingham 1 does state that you don't have to hire apprentices on public works, and the law of California has not changed at all in that regard since Dillingham  What appellant counsel has done is pointed out one feature of California law, Labor Code Section 1777.5, that would indicate just from that subsection, it is required to hire apprentices. But if you go through both that statute as well as California regulations, such as 230.1 cited on the brief, you'll find that really there are exceptions to the general rule that you have to hire apprentices on public works. Now, maybe you're not the one to ask, but counsel also says that as a practical matter, these rates are set by collective bargaining agreements, period. That's what happens in the real world. Well, in the real world, yes, they often are set according to collective bargaining agreements. He says they are so set, period, because as a matter of fact, if private employers, if 800 private employers are paying their people somewhere between 80 and $100 an hour, but varying, and one CBA comes in and is going to pay its people $60 an hour, that sets the rate if it covers 200 people. Right? That's what they said. Well, I mean, if the facts go that the modal rate is set by collective bargaining agreement, then under state law, yes, you do follow the collective bargaining agreement. That's not the case in all circumstances, though. First, I would point out. Well, they say as a practical matter, it is the case in all circumstances, because any private employers are going to be scattered, and the collective bargaining agreement is going to unify a number, say, 200 people, in my example. 200 people will all get the same rate, so that will, as a matter of fact, always establish the rate that gets used, because even though the others are higher or lower, they're scattered, so there aren't 200 people, but are you saying? Yes. They're saying there are 800 people who are all getting a higher rate of pay. One CBA undercutting that for 200 people will set the prevailing rate, and that's that. Well, first, let me point out, under California, well, you would also look at federal rates. If you look at California law under the Davis-Bacon Act, the code section 1773, it says you look not just at the collective bargaining agreements, but also the rates set by federal standards. So in the real world, that's what California is doing as well. It's not looking at just collective bargaining agreements. So there are two factors, federal standards and CBAs, in the real world. And then, in addition, if they don't establish the modal rate, if they don't establish the prevailing rate, then you look at other wages as well. Now, the real world, we don't have the real world here. This is a facial challenge to the statute. And there's the record has not established at all what is going on in the real world. We have to look at the law as it has been set by statute as well as interpreted by the court. Is this any different from the Davis-Bacon Act? Is it in places that are heavily organized, the prevailing wage is generally the same as the CBA, the standard CBA? In areas that are not heavily unionized, the prevailing wage may be different. Well, that's correct, Your Honor. I mean, the construction industry in California is heavily unionized. And so there is going to be a large influence there. And the problem is that- That's what I was trying to get at. I thought that they were saying you don't have to be heavily unionized. You can be very lightly unionized as long as you have the biggest block getting the same pay. So you could have only 5% of the workforce unionized, but if that 5% is getting the same pay and no other 5% is getting the same pay, even though it might be higher or different, then that 5% getting the same pay from the union becomes the prevailing wage. That's what they're saying. That's true. Is that right? Well, hypothetically, it could be true. Hypothetically, it could also be true that the large employers just happen to be paying comparable wages, even though, of course, for antitrust reasons, they would never talk to each other. But the large employers who are nonunion may be paying a similar rate, and they may have the largest single rate. That's also hypothetically true, is it not? Yes. Yes, and I would suggest that this Court should be directed certainly with this case as to what California law actually says, both by the statute and by the Supreme Court in the I.B.E.W.B. Aubrey case. Yes, that's the case. What did the Court say about how the rate is determined? Well, it basically tracked the statute, and in that case, the director had set some wage other than the collectively bargained wage rate, and the Supreme Court basically upheld, well, yes, that's what the director should be doing. Now, the other feature of this case that needs to be understood is that we have the Fitzgerald Act under federal law, which provides a clear congressional statement of intent that the states be allowed to regulate apprenticeships. And this is really important for both ERISA and NLRA preemption, because this Court is asked to determine what is the congressional intent in terms of, for this area of law, are the states allowed to regulate? And the Congress has clearly said that, yes, California and all other states are allowed to regulate. And the Dillingham Act, excuse me, the Fitzgerald Act, influenced this Court's decision in the Dillingham 2 case where, under the NLRA, for the public works, the California regulation of minimum wages was upheld, saying, first of all, that under the Fitzgerald Act, since that provides a clear expression of intent to allow the state to regulate, the NLRA shouldn't be read as implying that there's somehow preemption. Dillingham 2, wasn't that both public and private? That was, well, that was just public works. But what has happened is that the public works regulation has not changed at all. What's happened is private works at the time was set by reference to the federal poverty wage rate. Now what private works is doing for registered apprentices is it's looking to prevailing wages in very similar fashion to what you do for public works. And so the Dillingham 2 analysis should apply equally to the private works that's at issue here, particularly where the regulation is voluntary. Finally, with regard to the Dillingham 1 case involving ERISA, again, point out it's the law hasn't changed. It was about public works and about whether ERISA preempted the minimum wage regulation for registered apprentices. And the Court found, first of all, there's no reference to ERISA plans by state law, because state law does not require that you have an ERISA plan in order to have a registered apprenticeship program. You don't, well, you don't have to, that's fine. I'm sorry. And finally, with regard to the connected with problem, there is no connection with ERISA plans of California regulation going back to both state law, which says it is voluntary. And therefore, the state isn't requiring ERISA plans to do anything. And further, it is with reference to the Fitzgerald Act, which says this is a traditional area of state regulation for which, for the most part, ERISA is not concerned with. I see that my ten minutes are up. If you have any questions, I'll address them. Otherwise, I'll leave the balance of my time for counsel for the other. Thank you. May it please the Court. Linda Lye for Intervenor State Building and Construction Trades Council of California. I'd like to follow up on the conversation about the calculation of the prevailing wage and just explain why the way in which California calculates the prevailing wage with respect to public, private, any projects is simply not preempted by the National Labor Relations Act. Just to clarify, counsel for Appellant ABC seems to be taking the position that, as a practical matter, the director of the Department of Industrial Relations automatically adopts the wage rates contained in CBAs. Well, as Judge Reinhardt indicated, numerous California cases have indicated that that is clearly not California law. California law prohibits the director of the Department of Industrial Relations from automatically adopting wage rates contained in CBAs and requires the director to determine the wage rates that are actually prevailing. What is the clearest or best case that explains that? California Slurry Steelworkers Association and independent roofing. Both of those cases are State appellate court cases cited in our briefs. Also, I would just draw the Court's attention to Labor Code 1773.9. There was a discussion about the modal rate. There are certain circumstances in which the modal rate cannot be determined because there is no single rate that's paid to a majority of employees. And in that circumstance, the statute provides, quote, if a modal rate cannot be determined, then the director shall establish an alternative rate consistent with the methodology for determining the modal rate by considering the appropriate collective bargaining agreements, Federal rates, rate in the nearest labor market, or other data such as wage survey data. So basically, collective bargaining agreements provide one data point among many other for what constitute the market conditions and what constitutes the wages that are actually prevailing in the locality. If the regulators are not supposed to just adopt the CBAs but are doing so, I take it your argument would be that has nothing to do with preemption. And that has to do with suing the regulators for mandamus or prohibition or whatever. Is that correct? Absolutely. For failing to follow State law, it's not clear what the connection would be to the preemption argument. Basically, the State law requires the director to determine the prevailing wage based on what's actually prevailing in the locality. It's certainly not surprising that collective bargaining data would form, information would form one data point about wages that are prevailing in the locality because those are wages that are paid. See, what I'm trying to get clear, it seems to me that both counsels who preceded you said it doesn't matter what the majority are making. It only matters what a group is making. You just said to me something. You just said you just slipped into majority language. What they were telling me is if a majority is making over $80 but a CBA picks up a few people that are making, say, $70, that's what prevails. That's not majority. That doesn't sound like a majority of the workers in the area to me. There are going to be circumstances when there is no single rate that is paid to a majority of workers. In that circumstance, there is no modal rate, and then the director of the Department of Industrial Relations under Labor Code 1773.9 is to look at a variety of data. That's what I'm understanding. You said there's no single rate paid to a majority of the workers. So their example, the example I gave, you have 1,000 workers, 800 make varying rates, but 200 make the same rate. Now, I've given you an example where that's an example where the same rate is not paid to a majority of workers. They would say you adopt the rate for the 200. That's not a majority rate at all. Right. The statute does not say that you automatically adopt the CBA rate in that circumstance. The statute specifically contemplates the circumstance that you address, which is that there is no modal rate, and then it's left to the director. By that, you mean there's no majority. There's no majority paid to a single rate, correct. So basically, it's clear that we don't know how many workers you need to have a significant So it's going to vary. And basically, collective bargaining agreements are just one data point among numerous data points about market conditions that are actually prevailing. That makes sense. That sounds to me like what the statute says, but that's not what your two colleagues told me. They told me something quite the opposite. So you all just don't agree on what that is. It sounds like it's a complicated area. It's certainly a very complicated formula, but what we do know is that California law prohibits, as indicated in California Slurry Seal Association and Independent Roofing, prohibits the director from automatically adopting the wage rates contained in CBAs. There's no indication that the State is failing to follow State law. In any event, all the State is doing is setting a minimum wage rate, and it's looking at market data to determine that rate. There's certainly no – it's hard to understand what the preemption problem would be from the State calculating the actually prevailing rate based on, among other factors, CBA rates. If there were a preemption problem with that, then not only would Section 208 be preempted, but the California Apprentice – the prevailing wage for public projects would also be preempted, which counsel for ABC has specifically said he does not think is preempted, and that, of course, is consistent with this Court's decision in Dillingham  to also State prevailing wage provisions in the 30 other States besides California that have prevailing wages would also be preempted if the States could not determine – could not set the wage rates based on market data, including collective bargaining agreements. Basically, ABC seeks to resurrect two challenges to the – to California's establishment of minimum wage standards for apprentices, but these – both of these challenges have been foreclosed by this Court in Dillingham 2 and the Supreme Court in Dillingham 1. The key point of this case is that the touchstone of any preemption analysis is congressional intent, and in this case, we have a clear indication of congressional intent, and that was in the Fitzgerald Act. In 1937, Congress enacted the Fitzgerald Act, which this Court has interpreted in Dillingham 2 to mean, quote, Congress has not intended to leave the area of apprenticeship standards unregulated because Federal law unequivocally permits regulation of apprenticeship standards. Also, as Judge Reinhart pointed out, the apprenticeship standards in California are entirely voluntary. There is certainly no requirement that a contractor on private works projects use apprentices in State-approved programs. As for public projects, the requirement is exactly the same as that was – as that in Dillingham 1, and as counsel for the State pointed out, there are numerous exceptions to the general labor code provision about the use of apprentices on private – on public projects. Thank you. And in any event, there's certainly no – contractors on public projects are also entirely free to use apprentices from unregistered programs. There's no prohibition against that. Essentially, what Section 208 does is it's a mechanism by which the State is seeking to ensure that it receives the benefit of its bargain. The State sets forth voluntary apprenticeship standards with which an apprenticeship program seeking State approval must comply if and only if it wishes to obtain State approval. There's certainly numerous benefits to obtaining State approval. For instance, the State provides direct financial subsidies of approved programs, and apprentices in registered programs may be paid the lower apprentice-prevailing wage on public projects. Adequate wages, however, are necessary to ensure that apprentices actually graduate from programs. Attrition is a major problem in the apprenticeship programs because they are rigorous four- to five-year courses of training involving full-time employment as well as supplemental nighttime and weekend instruction. 208 – Section 208 is thus one mechanism of protecting apprentices by ensuring that they are not simply used as low-wage workers when it behooves the contractor, but then tossed aside before they are able to complete their full course of training. It's a mechanism by which the State is seeking to increase the likelihood that apprenticeship programs that receive all of the benefits of State approval actually train and graduate apprentices who have been trained according to State standards. Could you have one minute? Also, with respect to the ERISA question, I would just note that this case presents the identical question that was raised in Dillingham 1, and that question is whether an economic – whether the State may use economic incentives to encourage an apprenticeship program to comply with State standards. 208C is simply one of the many standards with which an apprenticeship program must comply. Also, just following up on one point Judge Reinhart raised about Dillingham 2, going back to the NLRA question, that statute did involve the apprentice prevailing wage requirement on public projects. However, the distinction between public and private projects had no role in the Court's reasoning in that case. In fact, this Court expressly declined to rely on that distinction in finding the provision not preempted. The State was trying to argue that the Boston Harbor proprietary doctrine applied that NLRA – normal NLRA preemption principles did not apply because the State was acting as a proprietor on public works. This Court declined to accept that argument and instead analyzed the apprentice minimum wage standards under an ordinary NLRA preemption analysis. And so the distinction here that counsel for ABC is trying to draw between public and private projects is simply irrelevant. It was absolutely not the basis for this Court's decision in Dillingham 2, which is therefore squarely controlling. Thank you, Kathleen. Thank you very much. One of the questions that this Court asked in the Bragdon case was whether the prevailing wage that was being applied to private construction was derived from those wage rates that were collectively bargained. It concluded that the way in which the California prevailing wage is adopted actually does create a situation where the prevailing wages are derived from the collectively bargained wage rates between the parties in the building and construction trades industry. This issue has actually become even more pronounced since the amendment of Labor Code Section 1773 in 1999. At that point in time, the statute was amended to include the modal rate, and the modal rate method specifically says that it will adopt for prevailing wage purposes the rate that is the most commonly recurring rate for a particular classification of worker in a particular area. I don't remember Bragdon. Isn't that where the union and the company would negotiate a rate, and then they would go and take that rate to the department, and the department would decide whether they would approve a particular rate or whether they would reject the labor agreement? And the Court said that this is interfering in collective bargaining because it's giving the employee not only the union but the State to decide. Yeah. I believe that's the Bechtel case, Your Honor, as opposed to the Bragdon case. But the Bechtel case is also very instructive in this regard. It's not unusual for organized labor and an employer to negotiate what I'll call private agreements if they're trying to capture a particular job or, let's say, they're trying to capture market share. And so with these kinds of, let's say, private agreements that are not based upon the master agreement of a particular area, they may adopt wage rates that are lower than the typical collectively bargained rate, let's say 80 percent of the total hourly wage rate. That is exactly really what happened in Bechtel. They started at the prevailing wage rate, and then Bechtel and organized labor decided that they needed, particularly Bechtel, decided they needed a significant wage concession to the 215 percent below what the normal amount was. But when they did that, when they entered into this kind of agreement reducing the wage rate, it had a direct and immediate impact on the apprenticeship wage rates that were dictated by statute. And in that particular instance, the Court, this Court found in Bechtel that the State of California then was now in the position of bargaining with the private parties to that collective bargaining agreement as to what the wage rate should be for apprentices. And that is very similar to the situation that we have going on in here. Both the Bechtel and Bragdon cases are directly apropos to the imposition of prevailing wages on private jobs for apprentices in the State of California, which is what Section 208 does. And lastly, Your Honor, we believe that the interpretation of the Fitzgerald Act being given by counsel is inaccurate. The Fitzgerald Act does not authorize the U.S. Department of Labor any more than it authorizes a State Apprenticeship Council like the California Apprenticeship Council to set wage rates or progressive increases or the amount of money that or the difference in progressive increases on a yearly basis or what the credit should be for fringe benefit contributions. Instead, the regulate, the Fitzgerald Act Regulation 29.5 says that the registering agency, so California Apprenticeship Council, is supposed to ensure that the plan sponsor does that kind of activity. In other words, the plan sponsor establishes the entry level wage rate for the apprentices based upon their skills in a particular craft in a particular area, the appropriate progressive increases, and also what they what the final wage rate would be once they get turned out. So it is. Kennedy, you're two and a half minutes over, so we'll give you 30 more seconds. And if this was the Davis-Bacon Act, it would specifically say that the Congress has delegated to the U.S. Department of Labor the authority to determine and ascertain and put into effect prevailing wage rates. But that's not what the Fitzgerald Act says, and that's not even what the California Labor Code says, because Labor Code section 3076 states that it's the function of the apprenticeship committee to set wage rates. It's specifically in the statute itself, and yet here we have the State setting those wage rates. Thank you, counsel. The case just argued will be submitted. Thank you all very much for an informative argument. The Court will stand in recess for the day. All rise. This court will recess and return.
judges: Reinhardt, Fernandez, Rawlinson